1          IN THE UNITED STATES COURT OF FEDERAL CLAIMS

2

3     MOLINA HEALTHCARE OF                )

4     CALIFORNIA, INC., et al.,           )

5          Plaintiffs,                    )   Case No. 17-97C

6          vs.                            )

7     UNITED STATES OF AMERICA,           )

8          Defendant.                     )

9

10

11                          Courtroom 5

12              Howard T. Markey National Courts Building

13                    717 Madison Place, N.W.

14                       Washington, D.C.

15                    Thursday, March 23, 2017

16                          2:00 p.m.

17

18          BEFORE:   THE HONORABLE THOMAS C. WHEELER

19

20

21

22   Deborah Wehr, RPR, Reporter

23

24

25

```
 1                    A P P E A R A N C E S

 2

 3   ON BEHALF OF THE PLAINTIFFS:

 4           LAWRENCE S. SHER, ESQUIRE

 5           KYLE R. BAHR, ESQUIRE

 6           Reed Smith, LLP

 7           1301 K Street, N.W.

 8           Suite 1100 - East Tower

 9           Washington, D.C.  20005-3317

10           (202) 414-9209

11           lsher@reedsmith.com

12

13

14   ON BEHALF OF THE DEFENDANT:

15           CHARLES EDWARD CANTER, ESQUIRE

16           U.S. Department of Justice

17           Post Office Box 480

18           Ben Franklin Station

19           Washington, D.C.  20044

20           (202) 616-2236

21           charles.canter@usdoj.gov

22

23

24

25
```

```
 1                 P R O C E E D I N G S
 2                  -   -   -   -   -
 3          (Proceeding called to order, 2:00 p.m.)
 4          THE COURT:  We are on the record this afternoon
 5     in the case of Molina Healthcare, et al., versus the
 6     United States, docket number 17-97C.  Let's begin with
 7     the introductions of counsel.
 8          MR. SHER:  Thank you, Your Honor.  Lawrence Sher
 9     for the plaintiff, the Molina plaintiffs.  And with me
10     is my colleague, Kyle Bahr, both from Reed Smith.
11          THE COURT:  Welcome.  Nice to see you both.
12          And for the United States?
13          MR. CANTER:  Your Honor, Charles Canter on behalf
14     of the United States.
15          THE COURT:  Good afternoon.  The reason I thought
16     it would be a good idea to get together this afternoon,
17     you all are aware that I decided the Moda healthcare
18     case a short time ago, and although we do seem to have a
19     difference of opinion just within our court about the
20     proper outcome in these risk corridor cases,
21     nevertheless, the Moda Health decision, I think,
22     reflects my analysis of the somewhat complicated issues
23     here.  And in this case I did recently receive a motion
24     for partial summary judgment which must cite to the Moda
25     Health decision probably 80 or 100 times.  So rather
```

1    than just assume that this case will play out as would
2    normally be the situation under our court's rules, I
3    thought it would be good to discuss what is the best way
4    forward for this case.  And I think it would be good to
5    hear first from Mr. Canter about this.
6         MR. CANTER:  Thank you, Your Honor.  Yes, as the
7    Court is aware, this is one of up to 23 cases in this
8    court bringing claims for money damages under Section
9    1342 of the Affordable Care Act, the risk corridors
10   provision.  There are also three sort of related cases
11   that raise collateral issues, including issues with
12   respect to the Section 1342 in the district courts.
13   There are two judgments in this court, Moda, as you
14   mentioned, and Judge Lettow's decision in Land of
15   Lincoln.  We also have four cases where there are
16   dispositive motions that are fully briefed.  Those are
17   pending before Judge Wolski, Judge Bruggink and Judge
18   Grigsby.  And then we are working on motions that --
19   dispositive motions in cases that were filed before this
20   case in Health Republic, that's the class-action for
21   Judge Sweeney that was the first case filed, and then
22   there are a handful of other pending motions for summary
23   judgment that have been filed before Judges Wolski and
24   Grigsby.  We have not responded yet.  I think there was
25   a recent one just filed that we'll probably be seeking

1    to either expand that deadline or stay that case.  And
2    there are eight cases that are stayed pending resolution
3    of Land of Lincoln.  There's one case that is just at a
4    sort of 60-day -- it's stayed for 60 days.  We file a
5    joint status report saying we would like another
6    60 days, and that's one of them.  The others are all
7    stayed pending the disposition of the Land of Lincoln
8    case.
9         It's been our position, the United States'
10   position, and I discussed this with Mr. Sher before the
11   motion for summary judgment was filed, and we've gone
12   over this.  He is handling several cases and we've had a
13   number of discussions about the different cases, but our
14   position has been that since the Land of Lincoln
15   decision, the newer cases should be stayed.
16        Now, we actually moved to stay Moda, if you
17   recall.  And the reason we moved to stay that case was
18   not -- it was one of the original cases that we would
19   have not have moved to stay but for the motion for
20   summary judgment.  At the time when we looked at that
21   motion, we thought, well, a motion for summary judgment
22   that includes the contract count that they had brought
23   created some problems for us.  So we moved to stay that
24   case.  You denied that motion saying one of the things
25   is that the Federal Circuit would benefit from

1    additional -- the views of additional judges.  And I

2    think the fact is that we are going to have -- we

3    already now have this Court's views.  We are going to

4    have more in the coming weeks and months.

5         With respect to -- and just by update of the Land

6    of Lincoln appeal, the plaintiffs and amici have filed

7    their briefs.  The government's brief is due April 24th,

8    and that date, I believe that's already with one

9    extension with the understanding that there would not be

10   additional ones.  It's my personal hope that that is a

11   hard deadline, and I have every reason to think it will

12   be.

13        In Moda, we have not yet filed a notice of

14   appeal.  The notice isn't due until May 5th.  While --

15        THE COURT:  I thought maybe you acquiesced.

16        MR. CANTER:  That would free up -- again, I think

17   I used the term with another judge, that would free up a

18   lot of my spring.  But I expect that that, given the

19   status of the cases, given the pendency of the Land of

20   Lincoln appeal, I expect that case will be appealed, but

21   as Your Honor is probably aware, the actual authority to

22   appeal a decision by the United States has to come from

23   the Solicitor General.  So that will be some time.

24        We have -- so again, it's our position that the

25   cases, including this case, really should be stayed

1    pending the outcome of the appeals, because at this
2    point I think it's pretty clear that, you know, with
3    respect to the statutory claim -- and really with
4    respect to all of the counts, there is no factual
5    differences among the cases.  We are getting cases where
6    you have an agency decision that says under the statute
7    we calculate payments in this amount.  So there aren't
8    factual differences.  There's a little factual wrinkle
9    with respect to whether or not you can bring in an
10   express contract claim because some issuers, and I
11   believe some of the Molina plaintiffs, maybe all of
12   them, I haven't looked carefully, have signed agreements
13   with CMS that relate to the federally-facilitated
14   exchanges where the plans are sold.  If you participated
15   on a state-based exchange where the state ran the
16   exchange, then there's no interaction.  There's no
17   express agreement that you enter with CMS.  So in the
18   case of Moda, for example, Moda participated primarily
19   on the Oregon exchange, which is a state-based exchange.
20        But otherwise the cases are fairly uniform, all
21   the ones that we've seen.  It's been our position that
22   these cases will all need to ultimately be decided sort
23   of one way or the other.  This is not a situation like
24   we discussed at the Moda hearing, the Winstar cases
25   where there's going to be trials and all sorts of

1    different records about what sort of deals were done.

2    It's really a matter of, you know, we think it's really

3    a matter under the statute: The government owes the

4    money and everyone should be paid or the government

5    doesn't owe the money and no one should be paid.

6          So the issues -- that issue is going to be

7    decided short of some agreement, which I don't foresee,

8    but we have every reason to believe that that issue will

9    be decided by the Federal Circuit or by the Supreme

10   Court.  So there's really not a need to continue to

11   brief each and every case that comes in the door.

12         I know Mr. Sher will get up and say that's a

13   terrible idea, we don't agree with that.  And I

14   understand that position.  So what we did, what we also

15   discussed with Mr. Sher was an extension in this case to

16   respond to the motion for summary judgment to May 5th.

17   That is the date the notice of appeal would be due.

18   Both because, again --

19         THE COURT:  That's the Moda Health appeal?

20         MR. CANTER:  Yes, the notice of appeal in Moda

21   Health would be due on May 5th.  Again, because as you

22   point out, the case, the motion for summary judgment

23   relies heavily on Moda paying.  Naturally enough, I

24   would do the same thing if I were in Mr. Sher's shoes.

25   And just for workload purposes, we've got a number of

1    upcoming deadlines.  Right now our response is due
2    April 14th, that Friday.  That week we actually have on
3    Monday supplemental response brief in the Maine
4    Community Health Options case before Judge Bruggink.  We
5    have oral argument before Judge Grigsby with Mr. Sher in
6    the Blue Cross/Blue Shield North Carolina case.  On
7    Wednesday the 12th, we have the response to the Health
8    Republic's motion for summary judgment before Judge
9    Sweeney.  And on the 13th we have a response to a motion
10   for summary judgment in the HPHC case.  I believe that's
11   Judge Grigsby.  And then following on that, as I
12   mentioned, the Land of Lincoln brief is due on
13   April 24th, and there is a newly filed motion for
14   summary judgement that's currently due that day that
15   we'll have to address.
16        So it's a long way of saying we think the case
17   should be stayed pending the disposition from the
18   Federal Circuit either in Land of Lincoln or at least
19   should be stayed pending some further development of the
20   Moda case.  In the alternative, we'd ask it be three
21   weeks extension from -- to May 5th to respond to the
22   motion for summary judgment.
23        THE COURT:  Okay.  What I wanted to avoid is the
24   prospect of getting what essentially is a motion for
25   reconsideration in Moda Health and the government's

1    brief in this case.  I don't see much point in doing

2    that.  So I wanted to explore if there was some easier

3    or better way to get to the end in this case.  And I

4    don't know what your feelings are about that.

5         MR. CANTER:  Well, I guess, I mean, so an easier

6    and better way, obviously there are -- we've reviewed

7    the Moda Health brief and we were requested to provide

8    supplemental briefing by Judge Wolski in the Montana

9    case because we were actually in the middle of argument

10   when the opinion was issued.  But I'm not aware of a way

11   in which, for example, the Court could simply say, you

12   know, for the reasons I stated in Moda Health, I'm going

13   to enter judgment without the United States making a

14   record to preserve issues for appeal.  I think even if

15   we are essentially going to be saying a lot more of the

16   same things that we said before in the Moda briefing,

17   you know, with some additional remarks about addressing

18   the Moda Health Plan opinion, which I think is

19   unavoidable in some respects, I don't know a way around

20   that.

21        I think the fact is that as far as I can see,

22   either we need to go forward with briefing, which I

23   agree I think is not the best use of anyone's time or

24   the case is put on hold for some period.  And I don't

25   know, it doesn't need to be indefinite.  It could be a

 1     fixed period of time.  It could be pending a disposition
 2     in Land of Lincoln.  It could be any number of --
 3     there's a lot between, you know, file a brief and stay
 4     the case forever.  There's quite a lot of room there.
 5     So I'm not aware of another alternative, though, the
 6     third way.
 7             THE COURT:  My normal feeling about staying a
 8     case is that I would be happy to do it when the parties
 9     agree that that's the best course of action.  If the
10     parties together tell me that they would prefer not to
11     expend resources on an issue that will likely be
12     resolved and in the not too distant future by the
13     Federal Circuit, I would pay close attention to that.
14     But often the plaintiff will raise significant reasons
15     why they think the case ought to go forward, as occurred
16     in Moda Health.  There may be financial considerations
17     that the plaintiff wants to raise.
18             Now, true, the answer to that may be that, well,
19     you are not going to get paid any earlier than a Federal
20     Circuit decision anyway, so why do you want to do that.
21     But generally, the plaintiff is the one seeking the
22     money damages in this court, and if they have a good
23     reason for going forward, I would generally defer to
24     that wish, providing all other considerations wash out.
25             MR. CANTER:  Understood, Your Honor.  I guess if

1    that's the direction the Court goes, and we'll hear from

2    Mr. Sher, then we would ask for an extension to May 5th

3    to file a response to the motion for summary judgment.

4              THE COURT:  Thank you, Mr. Canter.

5              Mr. Sher?

6              MR. SHER:  Thank you, Your Honor.  May it please

7    the Court, I would like to just address a couple of

8    points made by Mr. Canter first before I answer the

9    question that brought us here today.  So the first thing

10   is a stay.  As Your Honor preluded, we would not agree

11   to a stay for obvious reasons.

12             THE COURT:  What is obvious about it?  What are

13   the obvious reasons?

14             MR. SHER:  Well, we have our own case that we

15   filed.  It's -- we are owed over $50 million.  We

16   operate in nine states -- I believe now ten.  That's a

17   significant amount of money.  We are also owed money for

18   2016 which we estimate to be over 90 million.  And so we

19   believe we are entitled to make our own record and

20   obtain our own judgment.  And if the government wants to

21   appeal that case, then we have the right to defend a

22   judgment in the Federal Circuit ourselves.  We shouldn't

23   be confined to what is argued in the Federal Circuit if

24   they appeal in Moda or the pending Land of Lincoln case.

25   So we have our own rights.  We are the plaintiff and we

1    think the case should proceed.

2          As to an extension, Mr. Canter is trying to

3    address the Court's question with when, when briefing

4    should be.  And we would like to respond to the quality

5    or whether there should be briefing, because the Court's

6    question was what briefing, if any, is necessary, given

7    Your Honor's decision in the Moda case.

8          So plaintiff's position is that -- and the

9    government concedes that the two counts for which we

10   seek summary judgment, the first count, statutory count

11   and count 3 which is the implied-in-fact contract, are

12   substantively identical as Moda.  So I think we also

13   heard Mr. Canter say that he didn't want to just repeat

14   the arguments.  That would be a waste of resources to

15   repeat the arguments and the defenses they raised in

16   Moda in this case.  And Your Honor mentioned that he

17   doesn't want to just have a motion for reconsideration

18   of Moda, you know, in the guise of a Molina briefing.

19   So we agree with both of those points.  So there's

20   really no need to do it and there's no need to delay

21   that.

22         We think that briefings should be limited to any

23   new or different issues presented in Molina's motion

24   that were not already previously considered by the Court

25   in Moda.  And there are two issues, and I would like to

Molina Healthcare v. USA                    3/23/2017

1    address those.  But I would just like to say that with
2    respect to the question that Mr. Canter raised about
3    making a record for appeal, it seems to me that rather
4    than repeating a lot of the arguments they made in Moda
5    and having Your Honor and your clerks have to go through
6    it all and respond it to again, because you did write a
7    very detailed 40-page opinion, there could be some sort
8    of stipulation that the arguments that they made in Moda
9    are incorporated by reference and preserved for
10   appellate purposes in this case in which case there's no
11   need for them to repeat their arguments.
12          With respect to the different arguments, the two
13   issues, we could brief those.  So those two issues
14   are -- so before I go into the different issues, it's
15   the same grounds for count 1 and count 2.  It's the same
16   legal claims, the same law, the same facts, the same
17   statute, the same regulation, the same risk corridors
18   program and the same government that reneged on the
19   liability.  The only difference is the name of the
20   plaintiff, the name of the QHP, the states that were
21   involved and the amount of the risk corridor zone.
22   That's different.  Everything else is the same.
23          So the two issues that we raised that were not
24   raised in Moda is that, as you know, Moda did not move
25   for summary judgment as to the amount of damages.  They

1   did that in a two-step process.  So Your Honor entered

2   judgment on liability.  And then the parties came

3   together --

4       THE COURT:  Just so you are aware, there was

5   virtually nothing to be done at that point.  Even though

6   Moda did not move for summary judgment on damages when

7   we got to that point, both sides filed an unopposed

8   status report saying that no further proceedings were

9   necessary.  So we quickly got to the final judgment.

10      MR. SHER:  And that's why I think there does not

11  need to be briefing on that issue, because I have that

12  joint status report here.  And the government stipulated

13  that the November 19, 2015, CMS announcement of risk

14  corridor amounts owed for 2014 and the November 18,

15  2016, CMS announcements for what would be paid in 2015,

16  which turned out to be zero, that those were the

17  announcements, that -- the language that was used in the

18  joint stipulation is the amount that an issuer such as

19  Moda would have received.  So we don't think there's

20  really a question about the amount of damages.  That's

21  why we included it in our motion, having seen what

22  happened in Moda.

23      So the other difference that's not included in

24  the Moda case is that we have a request for declaratory

25  relief that's incidental and collateral or ancillary to

1    Your Honor finding a judgment on counts 1 or 3 as to

2    2014 and 2015.  What we are saying is that to the extent

3    you enter judgment on liability on the statutory count

4    or the implied-in-fact count and you find that Molina is

5    entitled to monetary damages, that incident to that,

6    Your Honor has the power to say to the government, and I

7    declare that the government is obligated to make full

8    annual risk corridor payments for 2016, which we

9    estimate to be over 90 million, and if the government

10   breaches that obligation -- Your Honor commented in Moda

11   that it would take a miracle, that was Your Honor's

12   words, to avoid that breach at this point, that if the

13   government breaches that obligation, they are required

14   to pay.

15          And so basically rather than having Molina have

16   to go back and amend their complaint or file a new

17   complaint as of 2016, it's the same rationale.  It's the

18   same analysis.  We cite in our brief pages 50 to 53

19   precedent in other cases where this Court has done

20   similar things where they are the same facts and law has

21   already been decided in the case and monetary damages

22   were awarded.  So that issue, I understand Mr. Canter

23   will say, well, we haven't briefed that.  Your Honor

24   should hear briefing on that and resolve that issue.

25          There was some briefing on a slightly similar

1    request, what I would say less specific request for

2    declaratory relief in the Land of Lincoln case and the

3    Health Republic case, but it wasn't briefed the same way

4    we briefed it.  They didn't cite the cases that we

5    cited.  The primary reason here is it's the saving of

6    judicial resources and efficiency and economy.  Those

7    weren't argued or briefed in the other cases.  I don't

8    think the Court addressed it.  So we think that that

9    issue should be briefed, but really that's the only

10   issue that's new or different in this case than in Moda.

11          If you really think about it, I have done some

12   research and I know that Your Honor is familiar with

13   issue preclusion, collateral estoppel.  We've got

14   several decisions on the issue.  And while we understand

15   that technically the Supreme Court has said that you

16   can't use offensive collateral estoppel against the

17   government, but the doctrine is one of judicial economy.

18   And so it's designed to prevent re-litigation of

19   identical issues if the issue was actually litigated, if

20   the resolution of the issue was essential to the

21   judgment and if the defendant had a full and fair

22   opportunity to litigate.  I don't think that any of

23   those elements are in question here.  There's no

24   question that they were satisfied and the government had

25   a full and fair opportunity to litigate its defenses in

1    the Moda case and argue them.  I was here at the oral
2    argument.  I think the government did a fine job
3    arguing.  And the government did not move for
4    reconsideration in Moda.  So there's no question that
5    those have all been litigated.
6            So while I don't think there can be an official
7    preclusion where Your Honor can order the government is
8    precluded from making arguments, you do have the power
9    to control the briefing in your case.  And we think it's
10   somewhat similar to -- I know Your Honor was involved in
11   the Winstar cases.  Sort of what then-Chief Judge Smith
12   did in the Winstar case, in the Cal Fed case, Your Honor
13   recalls there was common issue briefing in Cal Fed and
14   there were five cases that were up on summary judgment.
15   I was counsel to a couple of other Winstar plaintiffs at
16   the time.  So we signed on to those brief as well and
17   argued those issues.  And so after the exhaustive
18   analysis on the 11 issues, you know, Chief Judge Smith
19   held in favor of the plaintiffs and against the
20   government on all 11 defenses the government had raised
21   similarly in all of the cases.
22           And to save judicial resources, what Chief Judge
23   Smith did, just to remind you, is he issued an order to
24   show cause.  He said in all Winstar-related cases where
25   there are pending summary judgment motions or cross

1    motions, the United States shall show cause within 60

2    days why those motions should not be granted and

3    liability found on all Winstar contract issues based

4    upon the instant decision, the Cal Fed decision, and why

5    those motions should not be denied for the same reasons.

6           Chief Judge Smith at the time said the

7    government, in responding to this order, shall not raise

8    issues that have been resolved by opinions in the

9    original Winstar cases as clarified in this decision.

10   And he also ruled that failure to follow this order will

11   require the government to reimburse the plaintiffs for

12   attorneys' fees spent litigating issues that have

13   already been resolved by this Court, the Federal Circuit

14   or the Supreme Court.

15          Now, I realize Winstar had issues that had

16   already gone up to the Supreme Court and the Court of

17   Appeals.  But I use this as just an example that Your

18   Honor has tools to control the docket and the briefing.

19   So I think to the extent that the Court is inclined to

20   allow any briefing of the government, one thing that the

21   Court can do is to ask the government to stipulate or

22   incorporate by reference the arguments previously made.

23          The other thing the Court can do is to, short of

24   actual issue preclusion, is some sort of order that says

25   I order the government to raise -- if you want to brief

1    the issues, brief any issues that you haven't already

2    raised or briefed.  Only if there's something new.  And

3    Your Honor can determine that.

4         I'm being honest, I think, when I say that this

5    issue as to the declaratory relief we seek is the only

6    substantive issue that's different because we carefully

7    reviewed both complaints.  Our complaint was actually

8    filed, I think -- this complaint was later.  But the

9    complaints are similar.  And our motion, we didn't move

10   on the express contractual counts.  We only moved on the

11   statutory count and the implied-in-fact count.  So

12   Mr. Canter has stipulated that there's no factual

13   differences with respect to those counts and that the

14   cases are, to use his words, fairly uniform.

15        So we think that there should not be a stay, that

16   Your Honor should order the limited -- some sort of

17   limited briefing that precludes them from re-litigating

18   issues that Your Honor has recently decided against them

19   on identical counts.

20        And as to an extension, if the government needs

21   another couple of weeks to brief those limited issues,

22   we certainly would consider that.

23        THE COURT:  Okay.  Thank you, Mr. Sher.

24        Anything you would like to add, Mr. Canter?

25        MR. CANTER:  Indeed, there is, Your Honor.  Of

1    the cases where there are dispositive motions currently

2    pending and fully briefed, two of them are cases where

3    Mr. Sher represents the plaintiff.  We raised -- in

4    Highmark, a case that's pending before Judge Wolski,

5    Judge Wolski scheduled that argument for a Tuesday.  And

6    another case called Montana, also before Judge Wolski,

7    got scheduled for argument on a Thursday.  Overlapping

8    issues.  Now, there was not an opposing motion for

9    summary judgment, but there was the government's motion

10   to dismiss in Highmark under 12(b)(6), raising the

11   issues that were also presented in the Montana case.

12            I suggested to Mr. Sher, Mr. Sher, it doesn't

13   make sense for the Court to hear argument about the same

14   issues two days apart with the same judge.  Why don't we

15   either put off your case because you are just opposing a

16   motion to dismiss -- the summary judgment motion is

17   there -- or in the alternative, we also agree to combine

18   and consolidate the arguments so that, again, we are not

19   repeating ourselves, we are not coming back two days

20   later, not taking up two full days of Judge Wolski's

21   time.

22            Mr. Sher was opposed to that request because it

23   was not fair -- there are different counts in my case,

24   Highmark.  I shouldn't be bound by the arguments of the

25   other side.  I shouldn't have my time cut into by

1    someone else.

2         Now Mr. Sher is going to suggest that we be

3    precluded from making arguments in a case where there

4    are additional counts, counts that were not interposed

5    and we will move to dismiss in this case.

6         There is this new issue.  We will move to dismiss

7    that declaratory relief, in part because I think there

8    are serious problems about a declaratory judgment of

9    that nature saying basically the government is obligated

10   to pay this amount because of the problem we have here,

11   because we have an appropriation problem.  Again, short

12   of Congress appropriating the funds, which would be

13   great for all parties, I think Congress chose to

14   appropriate the funds to make payments, or a surprise in

15   2016 collections, there is no way to pay that.  You are

16   going to need -- they are going to need to be paid, if

17   at all, from the judgment fund, which will require a

18   judgment for that amount.  You are not going to be able

19   to enter a money judgment in an amount for 2016.  The

20   time hasn't run yet and no one submitted the data.  HHS

21   hasn't made the decisions.  But we don't need to get

22   into that for today's purposes.

23        The point is that we have a right to preserve a

24   record for appeal.  And I don't think -- we've had a

25   judgment on these issues with a complaint all but

1    identical to all of the complaints that Mr. Sher has
2    filed, because the Land of Lincoln people copied his
3    complaint, since November.  Not once has a case been
4    stayed over anyone's objection or anyone agreed even
5    that, no, these all should be decided the same way.  In
6    fact, it's one after the other.  We should have our day.
7    We just heard Mr. Sher, we should have our time; we
8    should be allowed to make our arguments; we don't want
9    to be bound -- there's a notion that we don't want to be
10   bound by the arguments in the Court of Appeals, but I
11   don't know that that's really how things are going to
12   work depending on the timing.
13        THE COURT:  Is this the first case, though, where
14   you have come back to the same judge on one of these
15   cases where a judgment has already been entered in a
16   prior case?
17        MR. CANTER:  So the first case where this
18   happened was before Judge Lettow with a Blue Cross of
19   Idaho.  Mr. Sher was the plaintiff there because we
20   said, Mr. Sher, it doesn't make much sense for this case
21   to go forward because we already know what Judge Lettow
22   thinks about these claims.  And he said, I agree.  So we
23   moved to stay that case with plaintiff's consent or
24   non-opposition.  Judge Lettow said -- he denied that
25   without prejudice to us responding to the complaint,

1    granted us 60 days to respond.  We responded and then

2    renewed that motion again with no opposition from

3    Mr. Sher's client.  And that case is stayed.

4          In a couple of the cases that are pending before

5    Judge Wolski and Judge Grigsby, the Crowe Firm, who is

6    representing a number of these plaintiffs, has filed

7    follow-on motions for summary judgment where we already

8    have the motion briefed and argued or set for argument.

9    And in those circumstances, again, the plaintiff said --

10   we said it makes no sense.  This is a waste of time for

11   these cases to proceed.  You will have -- you, Judge

12   Wolski or Judge Grigsby, will be deciding this issue,

13   and that presumably -- again, they should be consistent

14   across the cases.  And they opposed, so orders are set.

15         So I really see no basis -- if we are going to go

16   forward, we should be going forward.  And again, we ask

17   for the three weeks.  We'll file a brief we think is

18   appropriate to file and make the arguments we think are

19   appropriate to be made in light of the arguments

20   presented by Mr. Sher in his briefing and in light of

21   the counts that are presented in the complaint.  That's

22   what we suggest.  If we are not going to stay the case,

23   then we would ask for the three weeks to respond without

24   any sort of restrictions on what we would be filing.

25               THE COURT:  Is the government planning to file an

1    answer to the complaint now or not?

2         MR. CANTER:  No, because that deadline is --

3         THE COURT:  It's extended?

4         MR. CANTER:  It's extended for the -- because of

5    the filing of the motion for summary judgement.  So, no.

6    What we've done in all of the cases is move to dismiss

7    under 12(b)(1) and 12(b)(6).  We did file an answer in

8    Health Republic.  The reason being in that case, we only

9    moved to dismiss for lack of jurisdiction.  There was

10   only a statutory count.  So we filed an answer, the

11   plaintiffs moved for summary judgment, and we filed a

12   cross motion, as I said, a couple days before the motion

13   for summary judgment is due in this case.

14        THE COURT:  As I recall in Moda, the government

15   did initially file a motion to dismiss and then the

16   plaintiff cross-moved for partial summary judgment.

17        MR. CANTER:  That's correct.  And that's why I

18   said when we got the Land of Lincoln decision, what our

19   tack was and what our position remains is that the cases

20   that were filed where there is no briefing in those

21   cases up to that point should be stayed.  The cases that

22   were briefed or in the process of being briefed would go

23   forward.  We did move to stay Moda because -- I don't

24   remember the timing.  I think it was -- they responded

25   with an opposition and cross motion for summary

1    judgment.  And that caused us to think maybe a better

2    case because we are not sure how the summary judgment

3    works with respect to the contract count, that that

4    should be stayed as well.

5           Our initial plan, though, was not move to stay

6    Moda, but to stay the follow-on cases.  We've taken that

7    position consistently across all of the cases, at least

8    with respect to -- sometimes over the plaintiff's

9    objection.  Sometimes to the extent we've gotten consent

10   just for an extension, we simply sought the extension.

11   So that's been our position in all cases.

12          THE COURT:  Thank you, Mr. Canter.

13          MR. SHER:  May I briefly respond, Your Honor?

14          THE COURT:  You want the last word?

15          MR. SHER:  Just to respond to some things that

16   Mr. Canter raised, if I might, Your Honor.

17          The situation in the Highmark case is different

18   than this case for two reasons.  One, in Highmark the

19   government only moved with respect to 12(b)(1) on

20   count 1.  And there was no motion for summary judgment

21   pending at all.  So we felt we had the right to argue

22   against the 12(b)(1).  The Montana case which was argued

23   later, was a motion for summary judgment.  And it was on

24   the merits.

25          The other difference is although counsel was the

Molina Healthcare v. USA                    3/23/2017

1   same, the client was different.  So clients are entitled
2   to make up their own decision about whether to stay or
3   not stay a case or otherwise.  I can give them counsel
4   about it, but it's their decision.  So while the counsel
5   is the same, in this case, the defendant is the same in
6   both of those cases.  So that's the difference.

7           And also, as Your Honor pointed out, Judge Wolski
8   had not already decided any one of those cases before we
9   went in there.  Your Honor has already considered the
10  same issues.  That's the big difference here that the
11  defendant is not recognizing.

12          So essentially, the government is saying to this
13  Court that there's nothing they can do to limit or
14  narrow briefing.  We just think that's not true.  They
15  shouldn't be able to make the same arguments on the same
16  issues to this Court.  Now, if they weren't the United
17  States and if this were before 1984, issue preclusion
18  would actually prevent them as a matter of law from
19  doing it.  But for policy reasons, the Supreme Court
20  said, well, we are going to give the government a pass.
21  When the government is the defendant, they might not
22  have the same incentive to litigate all cases equally.
23  So as a policy matter, we won't allow that kind of issue
24  preclusion against the United States.

25          Those policy issues don't really apply here where

1    the cases are identical and they are being very ably

2    defended by the government vigorously in each case.  So

3    for those policy reasons, the Court, in managing its

4    docket, really shouldn't allow the government to just

5    repeat itself.

6           And I do believe that this is the only case where

7    a motion for summary judgment has been filed before the

8    same judge in the posture that we are in.  And so the

9    BCI case, again, a different client, but no motion for

10   summary judgement had been filed in that case.  So the

11   plaintiff in that case made a decision to stay that

12   case.  And that's the only client I have that made that

13   decision.

14          But certainly Molina is entitled to its day in

15   court and would like to move forward and believes that

16   the Court should fashion some sort of method to

17   streamline the briefing.  We can go ahead and brief all

18   the issues.  We are not afraid to do it.  We absolutely

19   can do it.  We've done it in other cases.  We just don't

20   think it's necessary given Your Honor's decision.  Thank

21   you, Your Honor.

22          THE COURT:  I'll tell you what, let me give these

23   issues a little bit further consideration and thought,

24   but I promise you that we'll get a resolution out to you

25   within the next few days easily.  So given where we are

1    now, whatever the outcome, I'll certainly give

2    consideration to the need for a little bit of extra time

3    on the United States' part.  I don't think we are going

4    to stay this case.  Beyond that, we'll figure out the

5    best way to go and be in touch.  So let's stand

6    adjourned.

7              (Whereupon, the proceedings at 2:42 p.m., were

8    concluded.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    CERTIFICATE OF REPORTER

2          I, Deborah Wehr, do hereby certify that the

3    foregoing proceedings were taken by me in stenotype and

4    thereafter reduced to typewriting under my supervision;

5    that I am neither counsel for, related to, nor employed

6    by any of the parties to the action in which these

7    proceedings were taken; and further, that I am not a

8    relative or employee of any attorney or counsel employed

9    by the parties hereto, nor financially or otherwise

10   interested in the outcome of the action.

11

12

13          _____

14                    Deborah Wehr

15                    Notary Public

16

17

18

19

20

21

22

23

24

25